**In the Matter of B.J.**

**No. 04–97–00113–CV.**

Court of Appeals of Texas,
San Antonio.

Nov. 19, 1997.

George Scharmen, San Antonio, for Appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before RICKHOFF, LÓPEZ and DUNCAN, JJ.

## OPINION

LÓPEZ, Justice.

This appeal arises from an adjudication of juvenile delinquency. B.J., a twelve-year-old boy, was charged with eight counts of various sexual offenses which he allegedly committed against his younger sisters. B.J. waived a jury trial and stipulated to the State's allegations. At his adjudication hearing, B.J. pleaded "true" and the trial judge sentenced B.J. to a determinate sentence of fifteen years in prison after commitment to the Texas Youth Commission.

On appeal, B.J. complains that (1) his plea was involuntary because the trial court failed to admonish him in accordance with section 54.03(b) of the Family Code, (2) his plea was involuntary because he is mentally retarded and neither his attorney nor the trial court determined that he understood the proceedings against him, (3) his plea was involuntary because the record does not affirmatively reflect that he knowingly and intelligently waived his right to a jury trial, and (4) his plea was not entered knowingly and intelligently because he did not have effective assistance of counsel in preparing for and entering his plea.

In his first point of error, B.J. complains that the trial court failed to ascertain whether he understood the charges against him or if he understood the presumption of innocence. Additionally, B.J. contends that the trial judge did not admonish him about his right to confront and cross-examine witnesses, or about his right not to incriminate himself. As a result, B.J. argues that his plea was defective. Because he was not properly admonished, B.J. maintains that the trial court's commitment order must be reversed.

■ The Texas Family Code directs the trial court to admonish a juvenile prior to taking the child's plea during an adjudication hearing. *See* TEX. FAM.CODE ANN. § 54.03(b) (Vernon 1996) (specifying admonishments for juvenile adjudication hearings). Specifically, the Family Code requires the trial court to explain to the child:

(1) the allegations against the child;

(2) the nature and possible consequences of the proceedings, including the law relating to the admissibility of the record of a juvenile court adjudication in a criminal proceeding;

(3) the child's privilege against self-incrimination;

(4) the child's right to trial and to confrontation of witnesses;

(5) the child's right to representation by an attorney if he is not already represented; and

(6) the child's right to trial by jury.

*Id.* These admonitions are mandatory to protect juveniles by ensuring they understand the nature of judicial proceedings against them. *See In the Matter of J.D.C.*, 917 S.W.2d 385, 386 (Tex.App.—Houston [14th Dist.] 1996, no writ) (explaining public policy considerations for mandatory admonishments). Due to the importance of these admonishments, failure of the trial court to admonish the child in accordance with section 54.03(b) is fundamental error. *See In the Matter of J.D.C.*, 917 S.W.2d at 386 (explaining why admonishments are mandatory); *In the Matter of I.G. v. State*, 727 S.W.2d 96, 99 (Tex.App.—San Antonio 1987, no writ) (determining that failure to admonish in accor-

dance with section 54.03(b) is fundamental error). Because the admonishments are mandatory, we must examine the admonishments given to B.J. to determine if he was properly admonished.

■ About B.J.'s right to a jury trial, the trial court proceeded as follows:

THE COURT:.... I have before me here a form called "jury waiver." Can you see it?

THE RESPONDENT: Yes, sir.

THE COURT: Is that your signature there?

THE RESPONDENT: Yes, sir.

THE COURT: I need you to explain to me, in your own words, what is your understanding of what you did when you signed that?

THE RESPONDENT: I don't understand.

THE COURT: Okay. In your mind, what is a jury waiver. What is that?

THE RESPONDENT: I don't know, sir.

THE COURT: You don't know.

THE RESPONDENT: (Indicating negatively.)

THE COURT: Do you understand what a jury is? Has anybody explained that to you?

THE RESPONDENT: Yes, Your Honor.

THE COURT: Excuse, me?

THE RESPONDENT: I don't understand.

THE COURT: Okay. Do you understand the charges that Ms. Davis read?

THE RESPONDENT: (No response.)

THE COURT: You were here when she read them; right?

THE RESPONDENT: (Indicating affirmatively.)

THE COURT: You need to tell me yes or no.

THE RESPONDENT: "Yes," sir.

THE COURT: You need to speak loud.

THE RESPONDENT: "Yes."

THE COURT: You heard the reading of the charges that are brought against you; correct?

THE RESPONDENT: Yes, sir.

THE COURT: Okay. The law requires Ms. Davis to prove those charges beyond a reasonable doubt. Did you understand that?

THE RESPONDENT: Yes, sir.

THE COURT: And that requires her to bring witnesses and, in front of a jury of 12 folks, prove up those charges. Do you understand that?

THE RESPONDENT: Yes, sir.

THE COURT: Do you understand that you have a right to have those charges proved up in front of a jury? In other words, you are not guilty of anything. Do you understand that?

THE RESPONDENT: Yes, sir.

THE COURT: Okay. By signing the jury waiver form, you are giving up the right to have the witnesses being brought up here and you are giving up your right to have your lawyer ask questions of those witnesses. Is that what you want to do?

THE RESPONDENT: (No response.)

THE COURT: Counsel, we are going to take a break here, because I don't know that I can take this stipulation.

MR. BOHAC [B.J.'s attorney]: All right.

THE COURT: So I am going to let you talk to him. And come back in 10 minutes or 15 minutes. And if he is not ready to stipulate, we will try this case at 1:30. Okay? . . . .

The above dialogue is inadequate as an admonishment for several reasons. First, the trial court failed to admonish B.J. about his right against self-incrimination. *See* Tex. Fam.Code Ann. § 54.03(e) (Vernon 1996) (protecting juveniles from self-incrimination); *id.* § 54.03(b)(3) (directing court to inform juvenile of right against self-incrimination). Second, the court did not inform B.J. about his right to confront and cross-examine witnesses. *See id.* § 54.03(b)(4) (directing trial court to explain right to confront witnesses). In addition, the above dialogue indicates that B.J. had difficulty responding to · the trial judge's questions. Because this difficulty suggested that B.J. did not fully understand the proceedings, the trial judge relinquished the task of admonishing B.J. about his right to trial by jury to his attorney. By failing to

fully explain B.J.'s rights, the court failed to properly admonish B.J. *Cf. In the Matter of J.D.P.,* 691 S.W.2d 106, 107 (Tex.App.—San Antonio 1985, no writ) (reversing where trial court asked juvenile if he understood what he was charged with rather than personally explaining allegations to him).

After B.J.'s attorney questioned B.J. about his understanding of the meaning of jury trial and whether B.J. wanted a jury trial, the trial court proceeded as follows:

THE COURT: [B.J.], do you understand that the charges against you are felonies? Do you understand that? In other words, they are serious crimes. Do you understand that?

THE RESPONDENT: Yes, sir.

THE COURT: Do you understand that they are sexual offenses?

THE RESPONDENT: Yes, sir.

THE COURT: Do you understand that these will stay with you after you become an adult? Do you understand that?

THE RESPONDENT: Yes, sir.

THE COURT: Do you understand that the range of punishment here is between probation and commitment to the Texas Youth Commission? In other words, you can go to juvee jail, as it is called out on the street. Do you understand that?

THE RESPONDENT: Yes, sir.

THE COURT: Do you understand that, as a consequence of you pleading true to this, you will be required to register as a sexual offender with the State of Texas? Do you understand that?

THE RESPONDENT: Yes.

THE COURT: Understanding all that, how do you plead to the charges brought against you?

MR. BOHAC: The judge wants to know if you want to plead true or not true to what you are charged with concerning your sisters. Are you saying that what the district attorney has charged you with—are those charges true or not true?

THE COURT: Is it true—

THE RESPONDENT: True.

THE COURT:—that you did what the district attorney says you did, or is it not true?

THE RESPONDENT: It is true.

THE COURT: It is true. Okay. I am accepting your plea and finding that you have engaged in delinquent conduct....

Although this discussion followed the reading of the allegations as reflected in the stipulated testimony, it is unclear that B.J. understood the nature of the charges against him.

■ The court informed B.J. that the charges were "sexual offenses," but the court did not explain the meaning of "aggravated sexual assault" or "indecency with a child"—the offenses with which B.J. was charged. *See* TEX. FAM.CODE ANN. § 54.03(b)(1) (Vernon 1996) (directing court to explain allegations to child prior); *A.E.M. v. State*, 552 S.W.2d 952, 955 (Tex.Civ.App.—San Antonio 1977, no writ) (reversing where trial court did not explain meaning of "aggravated rape" to juvenile). The court did not inform B.J. that by pleading true to the offense of aggravated sexual assault that B.J. was subject to a forty year determinate sentence. *See* TEX. FAM.CODE ANN. § 54.03(b)(2) (Vernon 1996) (directing trial court to inform child of nature and possible consequences of proceedings); *id.* § 54.04(d)(3) (specifying first degree felonies as offenses subject to determinate sentencing). The trial court simply asked B.J. if he knew that the offenses were "felonies" and that they were "serious." The court's admonishment that the charges would "stay with him after he became an adult" did not explain to B.J. that his adjudication as a juvenile delinquent would be admissible in a subsequent adult prosecution as consideration in sentencing. *See* TEX. FAM.CODE ANN. § 54.03(b)(2) (Vernon 1996) (directing court to explain law relating to admissibility of juvenile record in adult criminal proceedings); TEX.CRIM. PROC.CODE ANN. art. 37.07, § 3(a) (Vernon Supp.1995) (providing that juvenile adjudications are admissible in punishment phase of adult adjudications). The court's admonishments were inadequate to explain the serious nature and consequences of pleading "true" to allegations of aggravated sexual assault and indecency with a child.

■ Without a full understanding of the proceedings against him, of his rights in those proceedings, and of the possible consequences of a finding of delinquent conduct, a juvenile cannot enter a voluntary plea. Here, the trial court did not properly admonish B.J. about the allegations against him, the possible consequences of the proceedings, the admissibility of a juvenile adjudication in an adult proceeding, his right to confront witnesses, and his right against self-incrimination. Because B.J. was not properly admonished, we find that B.J.'s plea was defective. As a result of the defective plea, we find that the trial judge committed fundamental error.

■ Although B.J.'s appeal can be disposed of on his first point of error, we must recognize a fundamental deficiency in the court's sentence that was identified by the State in this appeal. The State correctly observed that the trial court was not authorized by statute to impose a determinate sentence for the offense of indecency with a child based upon the evidence introduced at B.J.'s adjudication hearing. Specifically, the State's petition alleging delinquent conduct charged that "on or about the 1st day of March, A.D., 1995," B.J. engaged in six indecencies with a child. B.J. pleaded "true" to these allegations and the trial court adjudged that B.J. had committed those instances of delinquent conduct.

The stipulated evidence introduced in support of the pleas of true contained a number of witness statements, the latest of which was given to the police on July 8, 1995, and a police report dated July 27, 1995. However, the offense of indecency with a child was made subject to determinate sentencing for offenses committed *after* January 1, 1996. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 262, §§ 27, 106(a), 1995 Tex. Gen. Laws 2517, 2530, 2591 (adding indecency with a child as offense subject to determinate sentencing for conduct occurring after Jan. 1, 1996). Because there was no evidence that B.J. engaged in indecency with a child after January 1, 1996, the court did not have authority to impose a fifteen-year determinate sentence for the offense of indecency with a child.

Even though the illegal sentence discussed above implicates only those findings of indecency with a child, we reverse the trial

court's commitment order in regard to findings of aggravated sexual assault as well because the trial court did not properly admonish B.J. However, because the record raises a question about B.J.'s mental competency, the trial court on remand must conduct a fitness hearing to determine B.J.'s fitness to stand trial.

RICKHOFF, Justice, concurring.

As a former juvenile judge, I admonished thousands of children and their parents pursuant to TEX. FAM.CODE ANN. § 54.03(b) (Vernon 1996). I found it impossible to devise an explanation of matters as complex as "the nature and the possible consequences" of proceedings like this one for the cohort of twelve-year-olds who are most prone to error so that they actually understood them. Nevertheless, our stated legislative goal is necessary. The proper admonishments must be delivered in a fashion acceptable if challenged on appeal; hopefully the trial judge will make the additional effort to develop a rapport with the respondent and communicate in language he understands. This trial judge attempted to do just that; ensure that this child actually understood these admonishments—a laudable but most often futile goal.

With this addendum, I join the opinion of the trial court.